01
02
03
04
05                  UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
06                          AT SEATTLE

07  TERESA L. SELING,                )   CASE NO. C13-0809-JLR-MAT
                                     )
08          Plaintiff,                )
                                     )
09      v.                            )   REPORT AND RECOMMENDATION
                                     )   RE: SOCIAL SECURITY DISABILITY
10  CAROLYN W. COLVIN, Acting         )   APPEAL
    Commissioner of Social Security,  )
11                                    )
            Defendant.                )
12  _____ )

13      Plaintiff Teresa L. Seling proceeds through counsel in her appeal of a final decision of

14  the Commissioner of the Social Security Administration (Commissioner).   The Commissioner

15  denied plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an

16  Administrative Law Judge (ALJ).   Having considered the ALJ's decision, the administrative

17  record (AR), and all memoranda, the Court recommends this matter be AFFIRMED.

18                      **FACTS AND PROCEDURAL HISTORY**

19      Plaintiff was born on XXXX, 1963.[1]   She completed college and previously worked as

20  a library and book salesperson, real estate agent, and sales representative.   (AR 182, 202, 224.)

21  ─────────────

22      1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of
    Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case
    Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT & RECOMMENDATION
PAGE -1

01    Plaintiff filed an application for DIB on June 29, 2010, alleging disability since
02 September 27, 2006.  (AR 139-40.)  Her application was denied initially and on
03 reconsideration, and she timely requested a hearing.  ALJ Kimberly Boyce held a hearing on
04 February 15, 2012, taking testimony from plaintiff and a vocational expert.  (AR 27-62.)  At
05 hearing, plaintiff amended her application, asking for a closed period of disability from
06 September 27, 2006 through August 1, 2011.  (AR 30-31.)  On March 2, 2012, the ALJ
07 rendered a decision finding plaintiff not disabled.  (AR 10-20.)

08    Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review
09 on March 4, 2013 (AR 1-5), making the ALJ's decision the final decision of the Commissioner.
10 Plaintiff appealed this final decision of the Commissioner to this Court.

11                                           **JURISDICTION**

12    The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

13                                            **DISCUSSION**

14    The Commissioner follows a five-step sequential evaluation process for determining
15 whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it
16 must be determined whether the claimant is gainfully employed.  The ALJ found that, while
17 plaintiff worked after the alleged disability onset date, the work activity did not rise to the level
18 of substantial gainful activity.  At step two, it must be determined whether a claimant suffers
19 from a severe impairment.  The ALJ found plaintiff's lumbar spine disorder, with multiple disc
20 protrusions and multilevel degenerative changes, severe.  Step three asks whether a claimant's
21 impairments meet or equal a listed impairment.  The ALJ found plaintiff's impairments did not
22 meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.  The ALJ found plaintiff had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c), except that she could stand and/or walk a total of six hours in an eight-hour workday, and could sit for a total of four hours in an eight-hour workday, with normal breaks.  The ALJ further found plaintiff could frequently kneel, crouch, and crawl, could occasionally stoop, and should avoid concentrated exposure to hazards because of the effect of pain medication.  With that RFC, and with the assistance of a vocational expert, the ALJ found plaintiff able to perform her past relevant work as a library and book salesperson, real estate agent, and sales representative.

If a claimant demonstrates an inability to perform past relevant work or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy.  With consideration of the Medical-Vocational Guidelines and the testimony of the vocational expert, the ALJ alternatively found jobs existed in significant numbers in the national economy plaintiff could perform, such as janitor, cleaner/maid, and assembler.  The ALJ, therefore, concluded plaintiff was not under a disability during the closed period of disability – from September 27, 2006 through August 1, 2011.

This Court's review of the final decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the final decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues that the ALJ erred in assessing her credibility. She requests remand for payment of benefits or, in the alternative, for further proceedings. The Commissioner maintains the ALJ's decision has the support of substantial evidence and should be affirmed. For the reasons set forth below, the Court agrees with the Commissioner.

## Credibility

Absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). *See also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

In this case, the ALJ found that, while plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, plaintiff's statements concerning

REPORT & RECOMMENDATION
PAGE -4

the intensity, persistence, and limiting effects of those symptoms were not credible. (AR 16-18.)[2] Contrary to plaintiff's contention, the ALJ provided clear and convincing reasons for her conclusion.

A. <u>Activities and Self-Employment</u>

The ALJ reasoned that plaintiff's reported activities and self-employment subsequent to her September 2006 injury in a car accident indicated she was able to return to gainful activity prior to her alleged closed period date of August 1, 2011. She noted evidence that plaintiff had "delayed possible medical care in order to travel[,]" and "reported moving boxes without pain." (AR 16 (citing AR 374, 385).) The ALJ further stated:

> In late 2009, the claimant began breeding cats, an endeavor that required caring for her animals, advertising her stock, building a website, and conducting all sales activity. In a function report from July 2010, the claimant reported skiing, walking, and caring for pets, driving, sweeping and vacuuming, preparing large meals, and having no difficulties with her personal care. She also declared that she could sit for two hours at a time, and could walk ten city blocks before needing to rest ([AR 190-201]). At the hearing, the claimant reported that she began skiing in late 2008 as a form of physical rehabilitation, and that she performed this activity on a limited, beginner-level basis, with the benefit of pain medication. This level of activity is inconsistent with a finding that the claimant was disable[d] during her alleged period of disability.

(AR 17.)

---

[2] The ALJ elaborated on this finding in her conclusion. (AR 18 ("I acknowledge that the claimant suffered a severe accident, and subsequently experienced a dramatic financial reversal. As a formerly athletic and active person, she appears to have had an understandably difficult time accepting the physical limitations caused by her pain. However, the claimant's reported activities and limited medical treatment, as well as the objective medical evidence, indicate that she was not disabled under the applicable standard of being unable to return to gainful activity. Despite my finding that she is not disabled under this standard, I certainly recognize the validity of her feelings of loss. I do not discredit her pain, only her allegation that she could not return to some form of gainful activity within the alleged period of disability.")) As the Commissioner observes, this discussion is consistent with the ALJ's earlier statement that plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not credible.

01      Plaintiff first asserts that a single treatment note reflecting travel did not translate to an

02 ability to perform substantial gainful activity on a regular and substantial basis. *See Orn v.*

03 *Astrue*, 495 F.3d 625, 638-39 (9th Cir. 2007) (" . . . [D]aily activities may be grounds for an

04 adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in

05 pursuits involving the performance of physical functions that are transferable to a work

06 setting.'") (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)), and *Hostrawser v.*

07 *Astrue*, No. 08-17474, 2010 U.S. App. LEXIS 2594 at *378 (9th Cir. Feb. 5, 2010) (fact that

08 claimant occasionally traveled and performed activities such as shopping, doing chores, and

09 using a computer did not "equate to being able to undertake the physical functions that would

10 be required on a sustained basis").

11      However, there are "two grounds for using daily activities to form the basis of an

12 adverse credibility determination[,]" including (1) whether the activities contradict the

13 claimant's testimony and (2) whether the activities "meet the threshold for transferable work

14 skills[.]" *Orn*, 495 F.3d at 639 (citing *Fair*, 885 F.2d at 603). The ALJ here appropriately

15 considered the record reflecting plaintiff's delayed treatment in order to travel as one of several

16 different examples of activity inconsistent with plaintiff's testimony as to the degree of her

17 limitation.

18      Plaintiff next observes that, in pointing to the report that she moved boxes without pain,

19 the ALJ omitted to mention that the same treatment note reflected she developed a flare of back

20 pain two to three days later while walking her dog, resulting in severe pain and about three days

21 resting in bed. (AR 374.) She avers that the ALJ erred in "not fully accounting for the

22 context of materials or all parts of the testimony and reports." *Reddick v. Chater*, 157 F.3d

715, 722-23 (9th Cir. 1998); *see also Gallant v. Heckler*, 753 F.2d 1450, 1455-56 (9th Cir. 1984) (ALJ "cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.")

Again, however, plaintiff fails to demonstrate error. "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). The treatment note in question reflects that plaintiff engaged in a significant physical activity without difficulty, and only several days later developed pain while engaging in a different physical activity – walking her dog. It can be said that the ALJ rationally took note of plaintiff's report that she was able to move boxes without pain as an additional example of evidence inconsistent with her testimony. *See Orn*, 495 F.3d at 639.

Plaintiff next argues the ALJ drew an unreasonable inference based on her activities associated with breeding cats. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("The ALJ's findings will be upheld 'if supported by inferences reasonably drawn from the record . . . .'") (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004)). She describes her testimony as to this activity (*see* AR 35-39), and denies any evidence she spent a substantial portion of her day engaging in work activities or that her activities would transfer to a competitive work setting on a full-time basis given her need to lie down during the day (*see* AR 51-52).

However, plaintiff fails to demonstrate the ALJ's interpretation of the evidence of her activities as related to her cat breeding business was not rational. The ALJ appropriately

considered plaintiff's ability to engage in some work activity. *See generally Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992) ("She was able to hold two previous jobs with a fair amount of success, and even if those particular jobs are, as she claims, too taxing for her, the vocational counselor testified that she is qualified for thousands of less strenuous jobs.") The ALJ further appropriately considered the tasks involved in that work activity – including caring for her animals, advertising her stock, building a website, and conducting all sales activity – as additional evidence contradicting plaintiff's testimony. The inferences drawn were reasonable.

Plaintiff also takes issue with the ALJ's reliance on evidence of her skiing. She notes her explanation at hearing as to the limited nature of that activity (*see* AR 38-40), and denies she spent a substantial portion of her day skiing or that this activity would transfer to a competitive work setting. The ALJ's consideration of this evidence was, however, entirely appropriate as evidence of a level of activity contradicting plaintiff's testimony. The ALJ acknowledged plaintiff's explanation as to this activity at hearing, but reasonably concluded the level of activity was inconsistent with a finding of disability. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (ALJ appropriately considers inconsistency with the evidence). Indeed, the mere fact that plaintiff's skiing was limited to "three or four" or "4-5 runs" at a time, on four or five occasions, "just for a couple of hours[,]" does not undercut the ALJ's consideration of this evidence. (AR 38-40, 195, 199.)

Finally, plaintiff challenges the ALJ's reliance on evidence of her daily activities, asserting they were taken out of context in that a number of activities were performed while lying down, only to a limited extent, and/or spread out over the course of the day. (*See* AR

190-95, 200.) She points to the Ninth Circuit's recognition that a claimant need not be "'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair*, 885 F.2d at 603).

Plaintiff fails to demonstrate error. As also recognized by the Ninth Circuit: "Even where [a claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (citations omitted). Here, the ALJ considered plaintiff's acknowledgment of and references to her participation in a variety of activities contradicting her allegations, including activities reflecting substantial physical activity that could not be performed while lying down, such as skiing, walking, caring for pets, driving, sweeping, and vacuuming. Although not referenced by the ALJ, plaintiff also noted in her function report that she engaged in biking "for 20-30 minutes at a time." (AR 199.) *See Warre v. Comm'r of the SSA*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006) (observations did not constitute an improper post hoc rationalization given that they were offered not "to invent a new ground of decision[,]" but to provide "additional support for the Commissioner's and the ALJ's position.") The ALJ's consideration of this evidence of plaintiff's activities was rational and should be upheld.

Plaintiff, in sum, fails to demonstrate error in the ALJ's consideration of her reported activities and self-employment in finding her less than fully credible. These considerations serve as clear and convincing reasons supporting the ALJ's decision.

B.  <u>Medical Record</u>

The ALJ also considered the fact that the "medical record documents minimal treatment

necessary for [plaintiff's] injury, as well as generally intact functioning." (AR 17.) She described a significant number of relevant medical records and concluded:

> The claimant's pattern of treatment indicates that her back pain was intermittent and improved by steroid injections and chiropractic treatment. Overall, her limited medical treatment is inconsistent with her allegation of disabling pain and dysfunction. Furthermore, her repeated findings of a normal gait, full lumbar range of motion, negative straight leg raises, and full lower extremity strength are inconsistent with her alleged limitations.

(AR 17-18.)

In challenging the ALJ's reasoning, plaintiff provides her own description of the medical record. (*See* Dkt. 15 at 9-12.) She maintains that, taken as a whole, the evidence supports her allegation that, while her symptoms gradually improved during the relevant period, she remained symptomatic through August 2011. She avers that the evidence does not contradict her testimony that she needed to lie down during the day. (AR 52.) Plaintiff also asserts that the ALJ failed to consider that her treatment was limited by her lack of insurance, noting her testimony to that effect. (AR 51.) *See* Social Security Ruling (SSR) 96-7p (ALJ should not draw inferences from failure to seek or pursue treatment without first considering explanations for that failure, including an inability to afford treatment). She further notes that, even if the ALJ accurately characterized the evidence, an ALJ may not discredit testimony as to subjective symptoms based solely on an absence of support by objective evidence. *Lester*, 81 F.3d at 834. However, as discussed below, plaintiff fails to demonstrate error in the ALJ's consideration of the medical evidence as related to her credibility.

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor

in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 96-7p. Indeed, credibility determinations are inescapably linked to conclusions regarding medical evidence. *See* 20 C.F.R. § 404.1529. In this case, the ALJ did not expressly reason that she rejected plaintiff's testimony based on an absence of corroboration by objective medical evidence. She, at most, pointed to findings reflecting, for example, moderate and mild objective findings. (AR 17.) In any event, even if construed as relying on an absence of corroborating objective evidence, this reasoning would not be inappropriate given that the ALJ provided other clear and convincing reasons for finding plaintiff less than fully credible.

The ALJ did, on other hand, directly point to contradictory medical evidence in her credibility assessment, noting plaintiff's "generally intact physical functioning[,]" and deeming "findings of a normal gait, full lumbar range of motion, negative straight leg raises, and full lower extremity strength . . . inconsistent with her alleged limitations." (AR 17-18.) "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008).

Plaintiff, in challenging the ALJ's decision, offers her own interpretation of the record as supporting her allegations. However, the ALJ is responsible for resolving conflicts in the medical record, *id.* at 1164, and when evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ, *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). *See also Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (noting "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary.") (internal quotation marks and citation omitted). In this

REPORT & RECOMMENDATION
PAGE -11

case, plaintiff fails to demonstrate that the ALJ's interpretation of the record was not rational.

Plaintiff also attempts to cast the ALJ's decision as containing an inappropriate reliance on a failure to pursue treatment without consideration of her lack of insurance. *Compare Molina*, 674 F.3d at 1113-14 ("We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.") (quoted sources and internal quotation marks omitted), *with* SSR 82-59 (failure to follow prescribed treatment may be justifiable where claimant unable to afford) and SSR 96-7p (ALJ should not draw inferences from failure to seek or pursue treatment without first considering explanations for that failure, including an inability to afford treatment). This argument fails.[3]

The Court first observes that the evidence as to plaintiff's inability to afford treatment is not entirely clear. Plaintiff testified at the February 2012 hearing that she "[n]o longer" has health insurance, which has interfered with her ability to go to the doctor. (AR 51.) While this may be true, the record also reflects that plaintiff did, for some relevant period of time, have health insurance. (*See*, *e.g.*, AR 278-81 (reflecting "Regence" payments in 2007 and 2008, and noting, in December 2007, a "new insurance plan.") and AR 371 (January 18, 2008 letter from Regence insurance inquiring into services provided for plaintiff).) Other documents

---

3 Plaintiff also cites *Warre*, 439 F.3d at 1003, for the proposition that the failure to follow prescribed treatment only supports a finding of non-disability if the treatment in question would effectively control the impairments. She maintains the evidence does not establish that taking more medication or undergoing surgery would have accomplished that goal. However, *Warre* does not stand for the proposition asserted by plaintiff. Instead, in that case, the Ninth Circuit noted that "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits" and acknowledged that "benefits may not be denied to a disabled claimant because of a failure to obtain treatment that the claimant cannot afford[,]" but rejected the contention "that disability benefits may not be discontinued if the claimant cannot afford treatment without them." *Id*. at 1006.

REPORT & RECOMMENDATION
PAGE -12

reflect that plaintiff's treatment was being covered through car insurance as a result of the accident. (*See*, *e.g.*, AR 291 (June 2006: "Statefarm – accepting liability.")) Given this evidence, it is not at all clear the ALJ could be said to have improperly relied on an unexplained or inadequately explained failure to seek or follow treatment.

In any event, plaintiff misconstrues the ALJ's reasoning. In addition to the contradictory medical evidence, the ALJ construed the record as reflecting "minimal" and "intermittent" treatment, and improvement through that treatment. (AR 17-18.) "Evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)); *accord Tommasetti*, 533 F.3d at 1039-40 ("The record reflects that Tommasetti responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset. Such a response to conservative treatment undermines Tommasetti's reports regarding the disabling nature of his pain."); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received"). Plaintiff fails to demonstrate any error in the ALJ's consideration of this evidence.

For the reasons stated above, the ALJ properly relied on contradictory medical evidence and evidence of improvement through minimal and intermittent treatment in assessing plaintiff's credibility. The ALJ, therefore, provided additional clear and convincing reasons for her credibility assessment and that assessment should be upheld.

## CONCLUSION

For the reasons set forth above, this matter should be AFFIRMED.

DATED this 20th day of December, 2013.

_[signature]_
Mary Alice Theiler
Chief United States Magistrate Judge

REPORT & RECOMMENDATION
PAGE -14